**NUM SPECIALTY, INC., Plaintiff,**
v.
**UNITED STATES of America,
Defendant.**
**Robert D. FRAWLEY and Inez B. Frawley, his wife, Plaintiffs,**
v.
**UNITED STATES of America,
Defendant.**
**Civ. A. Nos. 65–918, 65–919.**

United States District Court
W. D. Pennsylvania.

May 26, 1966.

Fred C. Houston, Jr., Pittsburgh, Pa., for plaintiffs.

Gustave Diamond, U. S. Atty., Pittsburgh, Pa., Michael B. Arkin, Trial At-

**2**

torney, U. S. Dept. of Justice, Washington, D. C., for defendant.

## OPINION

WEBER, District Judge.

These are two consolidated actions brought by the corporate plaintiff and its two principal shareholders to recover income taxes paid, after denial of claim for refund under the provisions of 28 U.S.C. § 1346(a) (1). The matter was heard by the Court without a jury.

From the evidence produced the Court finds that the two individual plaintiffs, husband and wife, operated the business of Num Specialty Company as a partnership from about 1930. Husband plaintiff is a dentist and developed two products, "Num" a surface dental anesthetic, and "Thum" a liquid for application to fingers which discourages thumb sucking and nail biting. The trade marks of these products are registered in the United States Patent Office, but they are not patented, and the formulae are not required to be registered with the United States Food and Drug Administration. The formulae are a closely guarded secret known only to husband and wife plaintiffs.

The business was incorporated in 1958 and began business as a corporation on January 1, 1959, the partnership assets having been assigned to it. In all respects, except for the corporate form, the business continued to function as it did as a partnership. Beside the two principal officers, there were two other regular employees, and a number of part time employees who were called in from time to time for bottling, labelling and packaging operations.

For the five years of partnership operations prior to commencing operations as a corporation, the net profit of each partner, after payment of all expenses and wages of other employees, ranged from $27,000 to $37,000 per year. At the organization meeting of the Board of Directors on January 2, 1959, wife plaintiff was elected President and Secretary at an annual salary of $25,000, and husband plaintiff was elected Vice-President at an annual salary of $25,000. There were no further meetings of the Board of Directors and salary was paid monthly to these officers at this annual rate except for certain months in 1960 and 1961 when the profits did not provide funds for these salaries, and the officers took voluntary reductions of salaries to $8,330 each in 1960 and $18,750 each in 1961. The principals did not desire to accrue these salaries on the books as an obligation of the corporation.

It is clear that the motive for incorporation was not that of tax avoidance, since the corporation could have elected to be treated as a partnership for income tax purposes under the provisions of the Subchapter S Amendment to § 1372 of the Internal Revenue Code enacted in 1958. It appears that the business purpose of incorporation here was the mechanics of financing the construction of a new building for the corporation. In all other respects the operation of the business continued as it had under the partnership.

Dr. Robert D. Frawley developed the formulae and by reason of his medical license was required to be present at the preparation of the mixture. In all other respects he was the outside man, calling on customers in the wholesale trade, brokers, drug supply houses, dental supply houses, and the like, over a large part of the country. He also devoted a small part of each week to the practice of dentistry. His corporate compensation is not attacked.

The government questions the reasonableness of the compensation of wife plaintiff, as president of the corporation, contending that her work is essentially clerical or secretarial.

The evidence showed that Mrs. Frawley is and has been fully employed in the business of the corporation. In addition to her knowledge of the secret formula, she is almost completely responsible for the internal business management of the business. She hires and fires all employees, arranges work schedules, attends to the bookkeeping, the finances, the fill-

ing of orders, the shipping, invoicing and even at times calls upon brokers, jobbers and drug supply houses that handle the products in the Pittsburgh area. She is a college graduate and was formerly a school teacher. While she had limited academic or special training in business administration, she had almost thirty years prior business experience in the management of this particular business prior to the beginning of this business as a corporate enterprise. While she had the assistance of a full time office worker who performed many of these services along with her, the final responsibility in all these matters was hers.

The product "Thum" was extensively advertised in national periodicals. "Thum" was the principal source of the corporation's income. It has had a continuous extensive sale over a number of years while other similar products have appeared and disappeared from the market. There has been a considerable variation in sales in the years in question, indicating the need for promotion. Mrs. Inez Frawley supervised a national advertising budget of approximately $35,000 placed through an advertising agency.

The Court heard and observed the two principals as witnesses and came to the conclusion that Mrs. Inez Frawley's duties and activities were equally as valuable and contributed to the growth and development of the business equally as that of her husband. In some respects her knowledge of its internal business affairs was greater than that of her husband.

This business was Mrs. Frawley's sole occupation, Dr. Frawley also practiced dentistry and for a period up to 1959 engaged in a business of owning and operating racing cars.

■■ Every case of reasonable compensation must be determined on its facts. Each business is peculiar and requires special examination. No single factor is controlling. We have examined the evidence with respect to Mrs. Frawley in the light of the standards set by the cases collected in 4 Mertens, Law of Federal Income Taxation, § 25.69, "Factors to be Considered in Determining Reasonableness" et seq. While no one element is to be considered to the exclusion of others, and the entire situation must be considered as a whole, we find that Mrs. Frawley's compensation must be measured by a consideration of the type and extent of the services she rendered, which extended over a wide field, her prior qualifications and experience in this particular business, the contributions which she made to the business venture over the years of its development, the peculiar and individual character of the business, her knowledge of the secret formulae of its products, and her prior earnings as a partner in this enterprise.

■ We, therefore, find that the compensation paid Mrs. Inez Frawley of $25,000 in 1959 and $18,750 in 1961 are reasonable and a proper item of business deduction for the corporate taxpayer.

The government has disallowed the expense of operating and depreciation of two Cadillac automobiles and a truck owned by the corporation for the three years in question on the grounds that the two Cadillacs were used partly for business and partly for personal use, and that the taxpayer had not sustained by records a proper allocation at the trial. The taxpayer produced an allocation between the truck and the two Cadillacs. However, the testimony of Mrs. Frawley and the office secretary was, uncontradicted that the automobile assigned to her was used entirely for business use and that it was regularly and constantly so used. While it may seem unusual that a Cadillac sedan was used daily to deliver parcels to the Post Office for mailing, and for picking up employees for work, the fact that this somewhat expensive vehicle has seen ten years of service may indicate that its initial purchase was a prudent business judgment.

■ Dr. Frawley also had a Cadillac sedan for his use. He travelled extensively on the company's business. He also had his own private automobile for

**4**

his own use. On cross-examination he did admit that there was some possibility of his using the company car for personal use, but he insisted that it was minimal. His accountant had charged him with receipt of income from other sources in the amount of $500 for the personal use of the corporation automobile in one year on his personal income tax return. Any non-business use established here is minimal.

We, therefore, find that the use of both Cadillac automobiles and the truck were ordinary and necessary expenditures in the operation of the business.

The parties, by stipulation, have agreed that the treatment of the dynamometer used in the racing car business of Dr. Frawley should be properly disposed of by treating this as an abnormal retirement from a single asset account, resulting in a loss down to its salvage value in 1959, and a denial of depreciation claimed by taxpayer in 1959 and 1960, and a gain on the sale in 1961.

This opinion shall constitute the required findings of fact and conclusions of law of the Court in this case heard by the Court without jury.