John P. Condakes and Evangeline Condakes, et al. [1] v. Commissioner. Condakes v. Commissioner
Docket Nos. 4699-66 - 4705-66, 5804-66.
United States Tax Court
T.C. Memo 1968-139; 1968 Tax Ct. Memo LEXIS 167; 27 T.C.M. (CCH) 690; T.C.M. (RIA) 68139; June 27, 1968. Filed Richard G. Maloney, 20 Ashburton Place, Boston, Mass., for the petitioners. J. Frost Walker, Jr., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies for the taxable years 1962 and 1963, for the following petitioners in the following amounts: *13 Deficiency
Name
1962
1963
John P. and Evangeline Con- dakes
$3,841.41
$4,350.40
George P. Condakes
4,743.38
George P. and Crystal Con- dakes
4,402.99
Leo P. and Mary Condakes
3,779.58
4,324.39
Pauline Condakes Toumpou- ras
4,493.96
George C. and Pauline Toum- pouras
4,512.42
James P. Condakes
4,757.40
5,273.28
*168 Due to the concessions made by the parties, the only issue for our decision is whether all or any portion of the stipulated fair rental value of certain leased automobiles is deductible under section 162 I.R.C. 1954, in computing the taxable income of the partnership under section 703, I.R.C. 1954. Findings of Fact Some of the facts have been stipulated. The stipulation and the exhibits attached thereto are incorporated herein by this reference. John P. Condakes, George P. Condakes, Leo P. Condakes, James P. Condakes, and Pauline Toumpouras (hereinafter collectively referred to as petitioners [2] or the partners), are brothers and sister, and children of Peter Condakes, the founder of Peter Condakes Company (hereinafter sometimes referred to as the partnership or the business). The petitioners owned the business and were equal partners in it. The petitioners filed their income tax returns on a calendar year basis. The returns for the years herein in issue were filed with the district director of internal revenue, Boston, Massachusetts. *169 During the periods in question, the partnership maintained its books and records on a fiscal year basis ending March 31, and filed its U.S. Partnership Return of Income (Form 1065), with the district director of internal revenue, Boston, Massachusetts. For the calendar years in question (1962 and 1963), the petitioners reported on their tax returns their respective share of the profits and losses of the partnership for the fiscal years ending March 31, 1962 and March 31, 1963, respectively, in the amounts reported on the partnership return. The petitioners, Leo P. Condakes (hereinafter sometimes referred to as Leo), and John P. Condakes (hereinafter sometimes referred to as John), filed joint Federal income tax returns with their respective wives for each of the years in question. George P. Condakes (hereinafter sometimes referred to as George), married late in 1963, and filed his individual return for the calendar year 1962 and a joint return for the calendar year 1963. Pauline Condakes Toumpouras (hereinafter sometimes referred to as Pauline), was also married in 1963, and filed her individual tax return for 1962 and a joint tax return for the calendar year 1963. James P. Condakes *170 (hereinafter sometimes referred to as James), was single during each of the calendar years 1962 and 1963, and filed his individual tax return for each of these years. James lived with his father at 17 Washington Street, Arlington, Massachusetts. Also, until their respective marriages in 1963, George and Pauline lived with their father at the above-mentioned address which is located approximately 10 miles from the place of business of the partnership. During the years in question, Leo lived in the Jamaica Plain section of Boston, which is approximately 5 miles from the place of business of the partnership. Peter Condakes Co. was formed on April 1, 1952, as a partnership. This partnership engaged in the wholesale fruit and vegetable business, and during the fiscal years in question had gross receipts in excess of $9,000,000. In addition, the partnership owned a substantial amount of investments in bonds and securities. The offices and warehouse of the business were located in a building at 453 C Street, South Boston, Massachusetts, which consisted of a two-story structure containing approximately 30,000 square feet. The top floor was utilized for repacking tomatoes which had been *171 purchased green from the farm and allowed to ripen in the warehouse. These tomatoes were packaged in one-pound trays for sale to supermarkets and independent grocery stores. The first floor of this building was used to store fresh fruits and vegetables and the partnership had a capacity for processing 1,200,000 pounds of fresh fruits and vegetables daily at the warehouse and also provided refrigerator space to hold 600,000 pounds. The partnership purchased fresh fruits and vegetables from growing areas all over the United States and sold this produce to retailers, other wholesalers and supermarkets in the Boston area. The business employed buyers located in various growing areas to purchase the produce for the partnership and ship it to Boston in freight cars. During the fiscal years ending March 31, 1962 and March 31, 1963, the partnership handled approximately 2,500 carloads of fruits and vegetables and had approximately 600 customers which made it the largest operation of its kind in the Boston metropolitan area. During fiscal 1962, the partnership leased five automobiles and three trucks from the P. K. Transportation Co., Inc. (hereinafter sometimes referred to as the transportation *172 company), for an annual rental of $36,000. During fiscal 1963, the partnership leased six automobiles and three trucks from the transportation company for the same amount of rental, namely, $36,000. The following is the fair rental value of the trucks and automobiles leased by the partnership for each of the fiscal years: *13 Fiscal Year Ended March 31, 1962
Description of Vehicle
Annual Fair RentalValue
1959 Cadillac
$ 3,707.63
1959 Thunderbird
2,868.69
1960 Cadillac
3,148.62
1960 Oldsmobile
2,639.05
1960 Cadillac
3,600.00
1959 Dodge Truck
3,340.00
1956 International Truck
3,960.00
1956 International Truck 3,960.00
Total
$27,223.99 *13 Fiscal Year Ended March 31, 1963
Description of Vehicle
Annual Fair RentalValue
1960 Oldsmobile
$ 2,634.51
1960 Cadillac
3,498.12
1962 Cadillac
3,340.36
1962 Cadillac
3,688.89
1962 Chrysler
2,771.24
1963 Thunderbird
3,008.23
1959 Dodge Truck
3,340.00
1956 International Truck
3,960.00
1956 International Truck 3,960.00
Total
$30,201.35 All the above-mentioned trucks and automobiles were owned by the transportation company during the years in question. P.K. Transportation *173 Co., Inc., a Massachusetts corporation, was organized on August 1, 1953, and maintains its books and records on a fiscal year basis ending March 31. It was formed for the purpose of receiving the necessary permits and licenses from the Interstate Commerce Commission and the Department of Public Utilities, so as to permit the delivery of produce owned by the partnership and others to mutual customers including the United States Army. Since its organization, the five partners have owned all of the outstanding capital stock of the transportation company in equal amounts. During the years in question, however, the transportation company engaged only in the truck and automobile rental business, having the partnership as its sole customer. The three trucks rented by the partnership during the fiscal years in question from the transportation company were used entirely in and for the business and 692 partnership. The operation of these trucks was under the supervision and control of Leo P. Condakes. The automobiles, during working days, were also under the control of Leo, who would authorize their use for the various tasks to be done. Generally, one of these leased cars was assigned *174 to each of the five partners. The petitioners drove their assigned automobile for commuting purposes, between home and the business. The customary working hours for the four male partners, from Monday through Friday, were between 3:30 and 5:00 a.m. to 6:00 to 6:30 p.m. Pauline's working hours were between 8:30 a.m. to 6:00 p.m. The partners also worked frequently on Saturdays and Sundays. During the working hours, the automobiles were used for checking the fruits and vegetables at the terminals, located anywhere from 1 to 6 miles from the offices, for contacting independent supermarkets, for transporting employees to and from the bank, for making small deliveries, for transporting the partners to and from the auctions, for picking up customers or shippers at the airport, and for various other business related tasks. During fiscal 1963, when the business leased six automobiles, a key employee was assigned the use of the 1962 Chrysler listed above, in the same manner as the partners. This employee was not a partner nor a relative of the partners. The automobiles in question were all registered at the home address of the petitioners' father. During these fiscal years, John, Leo, and *175 Pauline had other automobiles available for their personal and/or family use. No mileage records were kept concerning the use of automobiles during the day or evening. On occasion, the leased automobiles were used at the partners' homes for personal errands. The Commissioner, in the notice of deficiency, disallowed for the year 1962, $28,844.33 of the $36,000 rentals paid to the transportation company. It was determined that $16,072.98 constituted excess rental for the equipment and that $12,771.35 represented the fair rental value of the automobiles used by the partners in their personal affairs. For the year 1963, the Commissioner determined that $26,865.15 of the $36,000 rental paid was nondeductible. Of these amounts, $11,712.07 and $15,153.08 were disallowed as "Excessive Rent" and "Personal use of cars," respectively. The amounts listed below are found as the rental expenses properly deductible by the partnership in computing the taxable income of the partnership for the years in question: *13 Fiscal Year Ended March 31, 1962
Description of Vehicle
Deductible RentalExpense
1959 Cadillac
$ 1,853.82
1959 Thunderbird
1,434.35
1960 Cadillac
1,574.31
1960 Oldsmobile
1,319.53
1960 Cadillac
1,800.00
1959 Dodge Truck
3,340.00
1956 International Truck
3,960.00
1956 International Truck 3,960.00
Total
$19,242.01
*176 *13 Fiscal Year Ended March 31, 1963
Description of Vehicle
Deductible RentalExpense
1960 Oldsmobile
$ 1,317.26
1960 Cadillac
1,749.06
1962 Cadillac
1,670.18
1962 Cadillac
1,844.45
1962 Chrysler
2,771.24
1963 Thunderbird
1,504.12
1959 Dodge Truck
3,340.00
1956 International Truck
3,960.00
1956 International Truck 3,960.00
Total
$22,116.31
Opinion At trial, the parties agreed as to the fair rental values of the automobiles leased by the partnership and agreed that the rentals paid to the transportation company in excess of those totals were not deductible by the partnership under section 162(a), [3] I.R.C. 1954. [4] These concessions will be given effect under Rule 50. Thus, the only issue to be decided by us is what portion of the fair rentals of the automobiles are 693 deductible by the partnership in computing its taxable income. *177 To resolve this question, we must decide the extent to which the automobiles were used in the trade or business of the partnership vis-a-vis the personal affairs of the partners. This is wholly a fact question with the burden of proof on the petitioner. Rule 32, Tax Court Rules of Practice.
The Commissioner determined the deficiencies on the theory that the automobiles of the partnership were used by the partners for personal purposes approximately 60 percent of the time, and thus, the expenses attributable thereto are not deductible by the partnership under sections 703(a)[5] and 162. Accordingly, the Commissioner determined that each petitioner's distributive share of the partnership's taxable income must be increased by his or her pro rata share of this disallowed expense. Petitioners presented two of the partners as witnesses. Their testimony clearly established that the automobiles were used in part in the partnership's business. From these facts, petitioners argue that the proportion of *178 time the cars were used for personal affairs was infinitesimal and should be disregarded in calculating the nondeductible portion of the expense. Petitioner cites Rodgers Dairy Co., 14 T.C. 66; R. Golden Donaldson, 18 B.T.A. 230; Num Specialty, Inc. v. United States, 257 F. Supp. 1 (N.D. Pa. 1966), wherein this Court and a Federal district court found that the personal use of business automobiles by corporate employees was nonexistent or so minute that the expenses attributable to this use should be disregarded in calculating the deduction. These cases were, of course, based upon their respective facts which did not justify an allocation. We believe the facts herein are different. Here the automobiles were driven during the business day by the partners and other employees of the partnership in the pursuit of business and the expenses so incurred are clearly deductible under section 162. However, the facts also show that the automobiles were extensively used by the petitioners for personal purposes. Each day they commuted to and from their office in these leased automobiles, and enjoyed the availability of these cars at their respective homes *179 each night. Moreover, the cars occasionally were used at home for personal business. It is well established that these expenses, including the cost of traveling from a taxpayer's home to his first business related destination and from the last business related place to his home, are nondeductible personal expenses; Commissioner v. Flowers, 326 U.S. 465 (1946), 66 S.Ct. 250, section 1.262-1(b), Example (5), Income Tax Regs., and may not be deductible by the partnership as traveling expenses. In light of these facts, i.e., the use of the automobiles for both business and personal activities, and in light of the fact that petitioners have failed in their responsibility to maintain adequate records concerning these respective uses, we are obliged to apportion the total expenses between business use and personal use, applying the rule in Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). Bearing heavily upon the petitioners for their inexactitude, we find that the automobiles assigned to each of the partners were used a proportion of approximately 50 percent of the time in business related activities and that the 1962 Chrysler assigned to a key employee for *180 the taxable year ending March 31, 1963, justifies a full deduction either as being used in the business of the partnership or as additional compensation paid to this employee. Thus, the partnership may deduct the amounts found above in computing its taxable income. Decision will be entered under Rule 50. Footnotes
1. Cases of the following petitioners are consolidated herewith: George P. Condakes, docket No. 4700-66; Leo P. Condakes and Mary Condakes, docket No. 4701-66; Pauline Toumpouras, docket No. 4703-66; George P. Condakes and Crystal Condakes, docket No. 4704-66; James P. Condakes, docket No. 4705-66; and George C. Toumpouras and Pauline Toumpouras, docket No. 5804-66.↩
2. The term "petitioners" will be limited to the above-mentioned parties as the others were joined in this proceeding only by reason of having filed joint tax returns with their respective spouses.↩
3. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and (3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. ↩
4. All statutory references are to the Internal Revenue Code of 1954.↩
5. SEC. 703. PARTNERSHIP COMPUTATIONS. (a) Income and Deductions. - The taxable income of a partnership shall be computed in the same manner as in the case of an individual. * * *↩